REGAN, Judge
(concurring).
I respectfully concur.
All of the litigants concede that an error was made herein by the defendants’ attorney, but the plaintiff insists that he is entitled to capitalize thereon since he was misled thereby.
I am of the opinion that plaintiff was not misled by the erroneous balance sheet footnote, indicating that Salta held 700 treasury shares instead of 70. And while the option agreement warrants that the balance sheet is correct, the evidence convinces me that plaintiff knew or should have known that the disputed footnote was an error, obvious on the face thereof. Thus, I conclude that the plaintiff did not rely upon the balance sheet nor upon the warranty to his detriment. The explanation for having reached the foregoing conclusion is hereinafter set forth.
Plaintiff was interested only in obtaining New Orleans Stockyards, Inc. stock to gain control of that corporation. His efforts to acquire New Orleans Stockyards majority control date back several years before the option agreement was signed. Until 1952 the Hodges family were majority stockholders in that corporation, but upon the death of plaintiff’s father they lost control. Shortly thereafter, Salta was incorporated and the primary asset thereof consisted of New Orleans Stockyards, Inc. stock. A total of 2,518 of a possible 5,000 shares of New Orleans Stockyards stock was owned by the Salta Corporation and the defendants individually, who thereby controlled Salta. For each share of New Orleans Stockyards, Inc. stock owned by the Salta Corporation, it issued one of its own shares of stock.
In 1958, plaintiff approached Andrew Hillery, one of Salta’s directors, and initiated negotiations for the purchase of New Orleans Stockyards stock from either the corporation or its officers who owned these shares individually. Hillery related that the plaintiff initially offered to pay $65.00 per share therefor which was rejected. Thereafter they negotiated over an extended period of time and gradually the price per share through offer and counteroffer was increased. Finally the plaintiff offered to pay $95.00 per share for this stock, but Hillery’s proposal to the other stockholders of New Orleans Stockyards was refused; however, they made a counteroffer to sell their stock at $100.00 per share. Plaintiff was willing to pay that price.
At the request of the Salta incorporators, the parties agreed that the New Orleans Stockyards stock would not be sold outright by the corporation and the individual holders thereof because the defendants would gain a tax advantage by handling the trans *796 fer as a sale of the Salta Corporation outright. Plaintiff did not object to this method of transfer since, in acquiring Salta, he would obtain its primary asset, namely, the block of New Orleans Stockyards stock that the corporation owned.
Negotiations for the transfer continued over a period of months between plaintiff and Hillery and Ewell Potts, Salta’s attorney. Both Hillery and Potts asserted that plaintiff knew that Salta’s stock had been issued on a one for one basis with its holdings of New Orleans Stockyards stock.
Plaintiff denied that he knew that the Salta and New Orleans Stockyards stock were one for one, but he stated he did know, as a minority stockholder, that Salta voted 2,348 shares of New Orleans Stockyards stock at that meeting. He also possessed a copy of Salta’s charter, which limited it to the issuance of a total of 2,518 shares.
When the option agreement was signed in August 1959, a balance sheet covering Salta was presented to the plaintiff. After the option was signed and before plaintiff exchanged a check in the amount of $10,-000.00 for the option, he asked for an explanation of the Salta assets listing its own holding. It was then that Potts added the footnote showing there were 2,418 shares of Salta, of which 700 were treasury shares. The agreement required Hodges to pay $100.00 for each outstanding share.
Plaintiff testified that he used this balance sheet to compute the cost of obtaining the Salta Corporation. Because the statement noted that 700 of the 2,418 shares were treasury shares, he expected to pay $100.00 per share for 1,718 shares, or a total of $171,800.00.
The sale was consummated on February 23, 1960. A day or two before the sale,, Potts called plaintiff to inform him the exact amount of each check and designated the payee thereof. At that time plaintiff knew that the defendants would deliver a total of 2,348 shares of Salta stock. Although plaintiff’s worksheet reflected that he would be required to pay not over the sum of $171,800.00, nonetheless he prepared checks and promissory notes totaling $251,-800.00 and accepted delivery of 2,518 shares, which comprised 2,348 owned by Salta and 170 owned by the individual stockholders thereof.
Hodges laboriously offered the explanation, which of course taxes my credulity, that he did not question the difference of $63,000.00[1] in the purchase price because he assumed that Salta had reissued 630 of the 700 treasury shares back to the defendants individually. Predicated upon that unjustified and nebulous assumption, he indulged in the further assumption that since the option had established the fair market price at $100.00 per share that Salta would resell its treasury stock at this price. Thus he erroneously concluded, since he very obviously started from a false premise, that while he was paying considerably more than his worksheet revealed that he was required to pay therefor, he expected to acquire a corporation with $63,000.00 more in its cash account.
In my opinion, the foregoing explanation is not only implausible, it is fallacious. Hodges, an experienced business man whose knowledge of accounting is emphatically demonstrated by his December.worksheets, paid, without question or equivocation, considering the haggling over price which had existed over a period of several years, $63,000.00 more than he states he had ever anticipated paying therefor. In addition thereto, when he was presented a balance sheet at the time fixed for the sale, he tediously insisted that he did not examine it because he relied entirely on the warranty. The balance sheet is, to say the least, quite simple, and it is of special interest to refer thereto and note well that it does not reflect that the cash account asset was increased by $63,000.00, and it reveals the same treasury stock entry as an asset that the July balance sheet contained.
*797 The author hereof would have to place himself in the category of one of the proverbial three monkeys who saw no evil, heard no evil, nor spoke evil in order to believe plaintiff’s statement to the effect that he would pay $63,000.00 more in cash than his December calculations indicated was necessary to acquire the corporation without even glancing at the February 23rd balance sheet in order to ascertain if the cash account had been increased by $63,000.00 through the reissuance and sale of 630 treasury shares, especially since he actually knew how many shares Salta would deliver at least one day before the sale.
Further, it is inconceivable that the defendants would purchase treasury stock at $100.00 per share after the plaintiff had obtained his option to acquire the corporation. Since the defendants were committed to redeliver the stock to Hodges at the sale at the same price, it is highly improbable that they would invest their own funds in treasury stock when there was no hope of profiting from the investment.
Finally, had plaintiff relied on the balance sheet, he would ultimately have expended $171,800.00 for 2,348 shares of New Orleans Stockyards, Inc. stock, Salta’s principal asset. This is absolutely unrealistic when considered together with the very significant facts set forth hereinafter.
(1) Plaintiff only bought Salta to obtain its New Orleans Stockyards Inc. holdings.
(2) Sale of the Salta Corporation stock instead of sale of the New Orleans Stockyards stock was only done for tax advantages to the Salta stockholders.
(3) Plaintiff’s earlier efforts to acquire New Orleans Stockyards stock at $95.00 per share had been rejected by the defendants, who' ultimately would accept only $100.00 therefor.
Had plaintiff expected to acquire the Salta holding of 2,348 shares of New Orleans stockyard for $171,800.00, he would in effect be paying approximately $73.00 per share for New Orleans Stockyards stock. To reiterate merely for the purpose of emphasis, it taxes my credulity to accept Hodges laborious assertion that he expected to acquire this stock for $73.00 per share when his earlier offer of $95.00 had been rejected by the defendants.
You may place the law in bondage, but the wizard “justice” possesses its own way of setting the victim free.
I, therefore, conclude that a judgment of $63,000.00 in plaintiff’s favor is not supported by the record, but on the contrary the defendants’ position is fully substantiated therein.

. Plaintiff had already paid $17,000.00 to defendants individually for their holdings therein.